# WILLIAM A. WAGNER
## v.
# MARY E. CHANEY ET AL.

1. DRAINAGE.—The court is of opinion that this case does not fall within the rule in this State allowing the owners of the upper or dominant heritage to construct drains that will impose an increased burden of water upon the lower or servient heritage, because the water was not to be discharged into any natural and regular watercourse or channel leading from the land of appellees to that of appellant.

2. SURFACE WATER.—In this State the same rule is applied to surface water flowing in a regular channel that is applied to a watercourse continuously or usually flowing in a particular direction.

APPEAL from the Circuit Court of Livingston county; the Hon. N. J. PILLSBURY, Judge, presiding. Opinion filed June 14, 1886.

Mr. A. E. HARDING and Mr. N. Q. TANQUERY, for appellant.

Messrs. STRAWN & PATTON, for appellees.

BAKER, J.   This was a bill filed by appellant William A. Wagner, for an injunction to restrain appellees from draining their land, through the land of one Armstrong, and carrying the water therefrom by means of tile unto the lands of appellant. Answer and replication were filed, and upon the hearing the injunction was dissolved and the bill dismissed.

The farm of Armstrong lies south of appellant's farm, and the farm of appellees, which we will designate as the Chaney lands, adjoins both on the west. The evidence shows that a portion of the Chaney lands is low and wet and slopes to the north and east and toward the lands of appellant and of Armstrong, and that the surface water therefrom inclines or tends in the direction of and across the said lands, and toward a small pond, three fourths of which is upon appellant's land, and one fourth upon the Armstrong land. There is a gradual rise in the surface of the ground on the far or east side of this pond, for a distance of some eight hundred feet, in a

northeasterly direction, and from thence a gradual slope to Turtle creek. There is no natural outlet to this pond until it overflows; but some of the witnesses state that when the water has been high, they have seen it flowing therefrom across the land of appellant, to the northeast and to the creek. The evidence also shows that in 1883 appellant put in tile draining from this pond and connected it with an open ditch that led to the creek, thereby draining it, and rendering tillable some ten acres of his land adjoining the pond. Thereupon appellees proceeded to tile their low and wet land, through the land of Armstrong, to the locality of the pond that had been drained, and were engaged in so doing, when they were enjoined, the appellant claiming that his tile extending from the pond to the open ditch was insufficient in size, the fall being very slight, to carry off such additional water.

We are of opinion that this case does not fall within the rule as announced and held in this State, allowing the owners of the upper or dominant heritage to construct drains that will impose an increased burden of water upon the lower or servient heritage, and for the reason that the water was not to be discharged into any natural and regular watercourse or channel leading from the land of appellees to that of appellant. In this State the same rule is applied to surface water flowing in a regular channel that is applied to a watercourse continuously or usually flowing in a particular direction. But we are unable to see from the evidence in this record that there was any well defined channel or natural outlet for the water, either from the Chaney lands to the pond or from the latter to Turtle creek. The most that can be said is, that the Chaney lands were slightly higher than those of appellant and sloped in the direction of them, both being low and wet, and that the water from the former ran or had a tendency to run, not in a compressed form or in a natural, definite and usual channel, but generally in a diffused state, both over the latter and over the adjoining premises of Armstrong. In the case of Peck et al. v. Herrington, 109 Ill. 611, which is relied upon by appellees, it was said that it may be

regarded as a well settled rule that the owner of the upper field can not construct drains or ditches so as to create new channels for water in the lower field, but he may make such drains for agricultural purposes, on his own land, as may be required by good husbandry, although by so doing the flow of water may be increased in a regular, well defined channel, which carries the water from the upper to the lower field. Here, there was in the state of nature no usual channel, and the natural flow of the surface water was changed by the proposed new drain through the lands of Armstrong and appellees, and thrown upon the servient heritage at a different point and in a compressed form, and in such manner as to overburden the tiling appellant had put in for his own use, thereby endangering if not substantially destroying the land he had reclaimed, in respect to any beneficial use that might be made of it for agricultural purposes. The effect was to cast a body of unaccustomed water from the upper to the lower estate, and leave the owner of the latter to bear the burdens incident to such flowage.

We think that the circumstance that appellant at first said that the intended tile drain might be constructed through the land of Armstrong, if Armstrong was willing, can not be regarded as making lawful the acts and proposed acts of appellees, and also that it can not be considered therefrom that appellant is estopped, and for the reasons that there was no consideration for such consent, and it was withdrawn before appellees began the work. The injunction was in apt time, as the drain that was contemplated had not been completed.

The supposed hardship to appellees is obviated by the fact that under the provisions of the drainage act for agricultural purposes, approved June 23, 1883, and in force July 1, 1883, the owner of the superior estate is permitted, upon the terms and under the limitations prescribed by the statute, to enter upon the inferior estate and drain through it.

We hold that it was error to dissolve the injunction and dismiss the bill. For that error the decree is reversed and cause remanded, with directions to make the injunction perpetual.

                                    Reversed and remanded.