## TOWN OF BROWN

v.

## ELI BARRETT.

*Roads and Bridges—Action to Recover Penalty for Saturating Public Road—Construction of Statute—Current of Water, What is—Road and Bridge Act, Sec. 71.*

1. Appellee collected the water which was accustomed to flow over a wide surface of land, and brought the same by tile drainage to a point where it discharged and saturated a road; it is *held:* That this was "turning a *current* of water so as to saturate or wash" a public road within the meaning of Sec. 71 of the Road and Bridge Act.

[Opinion filed September 20, 1890.]

Appeal from the Circuit Court of Champaign County; the Hon. E. P. Vail, Judge, presiding.

Mr. J. L. Ray, for appellant.

Mr. J. S. Wolfe, for appellee.

Wall, J.   This was an action before a justice of the peace to recover the penalty provided by Sec. 71 of the Road and Bridge Act, for turning a current of water so as to saturate or wash a certain public road.   The case having been removed by appeal to the Circuit Court, was then tried by the court without the intervention of a jury, resulting in a judgment for the defendant, and by the further appeal of the town the record is brought to this court.

It appears from the evidence that the defendant had drained his land by tile, in such a way as to collect the water which was accustomed to flow, in a different state, over a wide surface, and not in any specific course or channel, and bring the same to a point on his own premises a few feet from the road, where it saturated the ground at the mouth of the tile, and that the saturation thus occasioned extended to and injured the road.   It also appeared, that while the greater part of the land thus drained naturally sloped toward the road, the natural course of drainage did not bring all the water to the point in question, and that but for the artificial drainage the saturation complained of would not have occurred; and it also appeared that about fifteen acres of the surface drained by this tile naturally sloped in the opposite direction, and but for the tile would not have drained toward the road at all.

Sec. 71, of the Road and Bridge Act, provides that, " If any person shall injure or obstruct a public road by  *  *  * turning a current of water so as to saturate or wash the same, *  *  *  he shall forfeit for every such offense a sum not less than $3 nor more than $10."

It is urged, upon behalf of the appellee, that to drain a sur-

face of land by tile in the manner above stated, is not " turning a current of water," within the meaning of the statute, and that there is here no violation of the same.   The argument is, that a " current of water means a body of water flowing in a limited specific stream, confined by certain banks or boundaries."   We think this position not well taken, and that the construction thus sought to be placed upon the language of the statute is too narrow.   Water may be accustomed to flow in a limited stream or over a wide surface, and may flow continuously or at intervals, but wherever it flows it is a current.   It is no doubt true that in speaking of a current of water, it would ordinarily be intended to refer to a stream within definite and specific limits, more or less constant and regular and flowing continuously; but this is not necessarily so, and in order to determine what such phrase was designed to enforce, embrace or designate, it would be proper to regard the general subject under consideration.   The evil which this statute was aimed at might be produced as effectually by turning the diffused drainage of a wide surface to one place, as by diverting the contents of a narrow stream. We are clearly of opinion that such drainage is within the purview of the law, and that, as applied to the general subject, the language employed fairly covers and includes it.

It is argued by counsel for appellee, that the ruling announced in Peck v. Herrington, 109 Ill. 611, justifies the action of appellee in thus draining his land.   We do not so understand the doctrine of that case.   It was there held that the owner of the upper field can not construct drains or ditches so as to create new channels for water in the lower field, but he may make such drains for agricultural purposes on his own land, as may be required for good husbandry, although by so doing the flow of water may be increased in a regular, well defined channel, which carries the water from the upper to the lower field.

In the case at bar the owner of the upper field did not drain into a regular or well defined channel, but directed the surface water to the new course of the drain, thus bringing the entire mass to a new point, where there was no channel or

outlet naturally provided, and thereby placing an additional burden upon the land adjacent to the mouth of the drain.

See, in this connection, Wagner v. Chaney, 19 Ill. App. 546, where a similar view of the ruling in Peck v. Harrington was taken. But there can be no possible doubt that, as to the water diverted from the west side of the land of appellee, and by the drain taken to the point in question, the action of the appellee was wholly unwarranted. Anderson v. Henderson, 124 Ill. 164; Dayton v. Drainage Com'rs, 128 Ill. 271. The surface water so diverted was considerable in extent— fifteen acres being involved—and it is a necessary presumption that the amount thus added to the drainage from the eastern slope did appreciably and substantially augment the saturation of the road.

Upon the whole case we are of the opinion that the judgment for the defendant was erroneous. It must, therefore, be reversed and the cause remanded for another trial.

*Reversed and remanded.*